# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

SHANITY CHILDERS and REECE )
CHILDERS, in substitution for )
TERRY CHILDERS, )
deceased, )
)
        Plaintiff, )
)
v. ) Case No. CIV-13-263-RAW-SPS
)
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
)
        Defendant. )

## REPORT AND RECOMMENDATION

Shanity Childers and Reece Childers, in substitution for the claimant Terry D. Childers, deceased, request judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). They appeal the Commissioner's decision and assert that the Administrative Law Judge ("ALJ") erred in determining the claimant was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the

Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born October 7, 1961, and was forty-nine years old at the time of the administrative hearing (Tr. 46, 144). He completed high school, and has worked as a mechanic helper, plumber's helper, forklift operator, press operator, and pipe bender (Tr. 34, 205). The claimant alleges inability to work since November 30, 2008, due to a seizure disorder and back problems (Tr. 204).

## Procedural History

On January 25, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Michael A. Kirkpatrick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 19, 2011 (Tr. 19-36). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a full range of work

at all exertional levels, except that he included the following nonexertional limitations: (i) as a seizure precaution, he should not climb ladders or scaffolds or ropes, or work in hazardous environments (such as unprotected heights or near dangerous moving machinery); and (ii) performing simple, unskilled tasks which do not require interactions with the general public (Tr. 25). The ALJ concluded that although the claimant could not return to any past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economy, *i. e.*, hand packer, bus person, and bench assembler (Tr. 35).

**Review**

The claimant contends that the ALJ erred: (i) by failing to find his neck and back pain to be severe impairments, (ii) by failing to assess his RFC properly in light of *all* of his impairments, and (iii) by failing to include all of the claimant's limitations in his hypothetical to the vocational expert. The undersigned Magistrate Judge find the claimant's second contention persuasive.

The record reveals that the claimant had the severe impairments of seizure disorder; depression not otherwise specified (NOS), cognitive disorder NOS, personality disorder NOS with antisocial and dependent features, and polysubstance abuse (Tr. 21). The ALJ noted that the claimant had the additional non-severe impairments of hypertension, cervical degenerative changes, T12 compression deformity, rib fractures, and right wrist fracture (Tr. 22). As relevant to this appeal, the record reflects that the claimant presented to Sparks Hospital on February 21, 2008, with psychotic symptoms including hallucination, and a right wrist fracture (Tr. 274-276). The claimant was again

hospitalized in May 2008 for seizures, alcohol withdrawal, hypertension, and suicidal ideation (Tr. 351). The claimant reported that he had been out of his seizure medications for two days, and the attending physician noted significant hypertension and also urged the claimant to quit drinking and stop smoking but did not feel the claimant was receptive (Tr. 351). Following an ATV accident in October 2008, a thoracic spine examination revealed old deformities of the left fourth and fifth ribs, as well as an acute fracture of the fifth rib and possible fracture of the sixth rib. Additionally, the T12 vertebra was mildly wedged or compress (Tr. 350). On April 28, 2009, the claimant was admitted to Eastern Oklahoma Medical Center for alcohol intoxication with clouding of consciousness, hyponatremia, hypokalemia, hypertension, and seizure disorder (Tr. 283). The hallucinations were largely attributed to coming off of alcohol intoxication (Tr. 283).

An April 2010 CT scan of the cervical spine revealed multi-level degenerative disk space narrowing most pronounced C3-4 and C5-6, broad dorsal spondylitic ridging and disk protrusion C3-4 with mild spinal canal stenosis and moderate bilateral foraminal stenosis, and minimal dorsal spondylitic ridging C5-6 and to a lesser extent C4-5 without canal stenosis at these levels (Tr. 341). Treatment records at the Eastern Oklahoma Medical Center indicated that the claimant was not on his seizure medications because he was unable to get them and unable to afford them (Tr. 426). The claimant reported financial difficulties and began treatment at Good Samaritan clinic. On October 12 and 15, 2010, treatment notes indicate that the claimant was still reporting approximately two to three seizures a week, that he had been hospitalized in Poteau in May of that year, and that his medications were not controlling his seizures well at that level. The treating

physician noted the claimant smelled of alcohol, was not sure if the claimant's presentation was due to alcohol intoxication or the result of seizure activity, adjusted his medications, and referred the claimant to AA (Tr. 410-411). In November 2010, he began treatment for anxiety (Tr. 412). During that time, and through January 2011, the claimant's hypertension was not well-controlled, and he informed the Clinic that he was not taking his medications because he could not afford them (Tr. 414).

Dr. Traci Carney, D.O., completed a disability examination for the claimant's physical impairments. She assessed him with seizure disorder, low back pain arising from a history of disc disease and a 1994 lumbar fusion, 30 years of tobacco abuse, alcohol abuse, and THC usage (Tr. 317-318).

Robert Spray, Ph.D., conducted a mental status evaluation of the claimant on March 25, 2010. He diagnosed the claimant with depression, NOS, and cognitive disorder, NOS, along with personality disorder, NOS with antisocial and dependent features (Tr. 312). He estimated that the claimant's IQ was borderline, noting that the claimant's concentration was poor but his motivation was very low, that his pace was slow and he had somewhat hesitant thoughts, and that his persistence was poor (Tr. 313). Furthermore, Dr. Spray noted he was cooperative but did not give good effort, and thus the assessment of cognitive functioning was likely inaccurate (Tr. 313).

Two friends also completed Third Party Function Reports for the claimant. Rhonda Karl had known the claimant three years, and stated that his impairments affected his ability to dress himself because he was afraid he would black out, and those concerns also applied to preparing meals and doing housework (Tr. 215-217). She stated that he

does not "do anything anymore" and that he spent most of his time in his bedroom, and that he did not handle stress or changes in routine very well (Tr. 219-220). Jennifer Pittman had known the claimant nine years, and she stated that his memory and balance were both impaired, and that he spent most of his time in his bedroom (Tr. 231-232). She stated that he sometimes needed reminders to take his medications, that his memory had been affected, and that although he used to enjoy fishing and riding 4-wheelers he rarely did so anymore (Tr. 233-235).

At the administrative hearing, the claimant testified that he is taking his seizure medications but that he still has seizures approximately twice a month, that he experiences low back pain from the 1984 lumbar fusion that has worsened as he has gotten older, and that he still experiences pain from his right wrist fracture (Tr. 49-52). He testified that he takes eight ibuprofen a day for pain, that he must lie down or sit in a recliner approximately six hours in a day, and that he does not drive because he is concerned about his seizures (Tr. 53-55). He testified that he has no income and receives medical treatment at the free clinic, Good Samaritan (Tr. 56). He reported recently being started on medication for anxiety and that they planned to send him to a psychiatrist if the medications did not successfully control it (Tr. 57). His nephew also testified at the hearing, because he had witnessed a number of the claimant's seizures. He testified that the claimant probably has seizures twice a month although they used to be more frequent, and stated that the claimant's legs begin to shake, then his whole body twitches, his eyes roll in the back of his head, and he often chokes on his tongue and loses consciousness (Tr. 58-59). He indicated that the claimant will fall if he is not sitting down, that he

sometimes loses control of his bladder, and that the seizures last upwards of four minutes long (Tr. 59). He stated that he and other family members regularly check on the claimant, and that with bad seizures it can take him two to three days to recover and with the milder ones about a day (Tr. 60).

Because the ALJ did find that the claimant had severe impairments, any failure to find the claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effects of these impairments and account for them in formulating the claimant's RFC at step four. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004) and 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in

original] [citations omitted]. But here the error *was not* harmless, because the ALJ entirely failed to mention, much less consider the "cumulative effect of claimant's impairments" at step four. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion].

At step four, the ALJ summarized the claimant's testimony and much of the evidence in the record, but failed to discuss the claimant's hypertension, cervical degenerative changes, and T12 compression deformity. As relevant, he recited the records related to the claimant's treatment for seizures and the implications related to how his alcohol intake affected his seizures. He noted the claimant complained of musculoskeletal pain exacerbated by exertion, but noted the claimant's physical examinations were within normal limits and there were no range of motion limitations (Tr. 28). He recited the evidenced regarding the claimant's mental impairments, including Dr. Spray's evaluation, and rejected findings that the claimant was marginally illiterate due to the claimant's failure to put forth sufficient effort on the exam (Tr. 29-30). He gave the opinions of the state reviewing physicians great weight, and adopted their findings for his RFC. As to the Third Party Function Reports, the ALJ recited their statements, then rejected them because "lay witnesses cannot determine whether observed behaviors are medically compelled, or whether they are merely a lifestyle

choice on the part of the claimant," and that their reports were not consistent with the claimant whom he found to be no credible (Tr. 31).

Here, although the ALJ discussed each impairment individually, he failed to address whether any of the medical evidence demonstrated any additional and cumulative effects. *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007) (noting that "obesity is [a] medically determinable impairment that [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC."), *citing* Soc. Sec. Rul. 02-01p, 2000 WL 628049, at *1, *5-*6, *7 (Sept. 2, 2002); *Baker v. Barnhart*, 84 Fed. Appx. 10, 14 (10th Cir. 2003) (noting that the agency's ruling in Soc. Sec. Rul. 02-01p on obesity applies at all steps of the evaluation sequence). Instead, he simply adopted wholesale the RFC prepared by the state reviewing physicians (Tr. 361-378). *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Finally, the ALJ erred in evaluating the Third Party Function Reports. Social Security Ruling 06-03p (SSR 06-03p) provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources who have not

seen the claimant in their professional capacity. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 (Aug. 9, 2006). SSR 06-03p states, in part, that other source opinion evidence, such as those from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: (i) nature and extent of the relationship; (ii) whether the evidence is consistent with other evidence; and (iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *5-6. The ALJ mentioned the Third Party Function Reports, but discredited them by stating generally that lay witness testimony is often dependent upon the subjective complaints of the claimant, wholly failing to properly evaluate it in accordance with the factors set out in SSR 06-03p. The ALJ's task in evaluating credibility of lay witness testimony is precisely to determine whether the witness's opinion is sincere or insincere, and then determine what weight, if any, to ascribe to the opinion or testimony. *See Spicer v. Astrue*, 2010 WL 4176313, *2 (M.D. Ala. Oct. 18, 2010) (finding that an ALJ's rejection of a lay witness statement because it was not a substitute for an appropriate medical opinion must *not* be based on a rationale that "applies with equal force to every 'lay statement.'"). Notably, while it may be appropriate for the ALJ to reject lay witness testimony that is based on the subjective complaints of a claimant when the ALJ has already determined that the claimant is not credible, *see, e.g., Valentine v. Commissioner Social Security Administration*, 574 F.3d 685, 694 (9th Cir. 2009) ("Mrs. Valentine's testimony of her husband's fatigue was similar to Valentine's own subjective complaints. Unsurprisingly, the ALJ rejected this evidence based, at least in part, on 'the same reasons [she] discounted [Valentine's] allegations.' In light of our conclusion that the

ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."), he is not entitled to reject *all* lay witness testimony with a blanket statement and without the proper analysis.

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the claimant's nonsevere impairments, and whether they had additional and cumulative effects when assessing his RFC. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2014.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**